ALBERT A. NODINE, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28290.)

Court of Claims, June 1, 1948.

*A. Thorne Hills* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Harold S. Coyne* of counsel), for defendant.

LAMBIASE, J. Claimant has filed this claim "for damages sustained by the claimant as a result of the failure of the State of New York and/or the Labor Department of the State of New York, Division of Placement and Unemployment Insurance, to remove from certain premises leased to The People of the State of New York, pursuant to the provisions of a written agreement dated the 9th day of March, 1945, made by and between the Superintendent of Public Works and the Lohrmann Building, Inc., and being for premises * * *, which said lease and the right of The People of the State of New York and/or its agents or employees to occupy said premises terminated on the 28th day of February, 1946 at 12 o'clock noon." (Claim, paragraph 2.)

It is conceded (a) that the State of New York was notified on or about the 19th day of December, 1945, by said Lohrmann Building, Inc., that said lease would not be renewed, and that the owner desired the State to vacate the said premises, said premises having been leased to the claimant herein for a period of two years beginning on March 1, 1946; and (b) that the State of New York, its agents and employees, failed to vacate said premises and held over in their occupation thereof until March 19, 1946.

The claim herein sets forth under paragraph 9 subdivisions (a) through (g) thereof certain items of damage aggregating the sum $948.50. Motion to amend the claim as to claimant's item (a) so as to increase the demand thereunder from the sum of $275 to that of $460.59 was granted upon the trial, making the total amount demanded in the claim the sum of $1,134.09. No formal order allowing said amendment having been entered by the claimant, this opinion and its filing, insofar as it concerns said amendment, shall be considered equivalent to the making and entry of such a formal order.

Upon the trial, and more particularly at the end of claimant's case, the State moved for a dismissal of the claim " * * * on the ground of the untimely filing of the Notice of Intention and also on the ground that there has been no negligence shown upon the part of the State, its employees, officers or servants, and on the further ground that there is no contract existing between the State of New York and the

574

Claimant." In its brief the State agrees that if we find that the claimant was the tenant entitled to take possession as of March 1, 1946, and that he is the proper claimant against the State of New York in this claim for damages resulting from the State's holding over after the expiration of its lease, and if we conclude that the claimant herein timely filed and timely served his notice of intention, then the claimant is entitled to such damages as are the natural and necessary consequences of such holding over. And in that respect, the State admits that should we find the foregoing, claimant is entitled to an award for $275 under the aforesaid item (a) and for the aggregate amount asked for under items (b) through (f) of paragraph 9 of the claim herein, amounting in all to the sum of $623.50, the reasonableness of the amount of each of which items it does not question. It resists under all circumstances, the awarding of any sum demanded under said subdivision (a) aforesaid in excess of $275, and the awarding of any sum claimed under subdivision (g) aforesaid.

We now discuss various points raised by the State on its motion to dismiss, which points we deem pertinent:

(1) As to the untimely filing of claimant's notice of intention to file a claim: Claimant, under his lease which had been made while the State was still in possession of said premises, was to have taken possession on March 1, 1946. The State refused to give claimant possession on that day, and, in fact, held over until March 19, 1946. Claimant's notice of intention to file a claim was filed with the clerk of this court on May 31, 1946, and was served on the Attorney-General on May 29, 1946. It is claimed by the State that the filing on May 31, 1946, was untimely. We are unable to agree with this contention of the State.

Upon the undisputed facts, the State of New York wrongfully withheld possession of the premises from the claimant. The filing provision applicable herein is contained in subdivision 3 of section 10 of the Court of Claims Act which requires that: " A claim to recover damages for injuries to property or for personal injury caused by the tort of an officer or employee of the state while acting as such officer or employee, shall be filed within ninety days after the accrual of such claim unless the claimant shall within such time file a written notice of intention to file a claim therefor, in which event the claim shall be filed within two years after the accrual of such claim."

Our search for an answer to this question takes us to section 20 of the General Construction Law which now reads, and at all times in the claim mentioned read, as follows: " A number of days specified as a period from a certain day within which or after or before which an act is authorized or required to be done means such number of calendar days exclusive of the calendar day from which the reckoning is made. Sunday or a public holiday, other than a half holiday, must be excluded from the reckoning if it is the last day of any such period, or if it is an intervening day of any such period of two days. In computing any specified period of time from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning."

It is obvious that section 20 aforesaid is applicable where the period specified is fixed in " number of days " as is the case with subdivision 3 of section 10 of the Court of Claims Act. Applying the provisions of the foregoing statute to the instant case, we exclude March 1, 1946 — said date being the earliest date upon which, under the circumstances herein, claimant's claim could have accrued,— but not necessarily determining said date to be the actual accrual date of this claim, and we find that the ninetieth day thereafter is May 30, 1946, known as Memorial Day, designated as a holiday under section 24 of the General Construction Law and, therefore, to be excluded also under section 20 of the same law, thus permitting the filing herein on the day following, to wit: May 31, 1946. We conclude, therefore, that the filing and service of the notice of intention to file a claim herein was timely. (General Construction Law, § 20; *Benoit* v. *New York Central & H. R. R. R. Co.,* 94 App. Div. 24; *Matter of Hall* v. *Leonard,* 260 App. Div. 591, affd. 285 N. Y. 719; *Biloz* v. *Tioga County Patrons' Fire Relief Assn.,* 21 N. Y. S. 2d 643, affd. 260 App. Div. 976; *Gilbert* v. *Johnson,* 169 App. Div. 840; *Jablon* v. *City of New York,* 177 Misc. 838, affd. 268 App. Div. 859; *Zimand* v. *Kirsch,* 170 N. Y. S. 47, 164 N. Y. S. 780.) See, also, as to the construction of the words " Claim Accrued " as contained in section 10 of the Court of Claims Act and " Cause of Action Accrued " (*Megerell* v. *State of New York,* 46 N. Y. S. 2d 685; *Inkawhich* v. *State of New York,* 22 N. Y. S. 2d 761, 762).

(2) As to whether or not claimant is the proper claimant: The courts of this State have held that the covenant to give

the lessee possession imports no more than that the lessor had at the time such a title to the demised premises as enabled him to give the lessee a legal right of entry and enjoyment during the term, and does not require the lessor to give actual, physical possession of the demised premises to the lessee. Nevertheless, it is incumbent upon the lessor to put the lessee into legal possession, that is, the lessor must see to it that no one else has a superior right of possession, so that no obstacle will be interposed to the lessee's obtaining actual possession of the premises. Claimant was not kept out of possession by anyone holding under authority of his lessor or by one having title paramount to his, and the present case is not one where claimant's landlord covenanted to give claimant possession when he had no authority to do so. Claimant could have had possession but for the wrongful act of the State of New York. *Gardner* v. *Keteltas* (3 Hill 330, 331–333) was an action to recover damages alleged to have been sustained by a lessee by reason of lessor's neglect to put him in possession of certain premises in the city of New York according to the terms of a lease thereof in the usual form of landlords' agreements. The court, per NELSON, Ch., J., said: " All that either of the covenants mentioned exact of the lessor is, that he shall have such a title to the premises, at the time, as shall enable him to give a free, unincumbered lease for the term demised. There is no warranty express or implied against the acts of strangers; hence, if the lessee be ousted by one who has no title, the law leaves him to his remedy against the wrong-doer, and will not judge that the lessor covenanted against the wrongful acts of strangers unless the covenant be full and express to the purpose. * * * I admit, the covenant of quiet enjoyment means to ensure to the lessee a legal right to enter and enjoy the premises, and if he is prevented from entering into the possession by a person already in, under a paramount title, the action may be sustained. * * * But if the party holding is a wrong-doer, the remedy of the lessee is as perfect and effectual to dispossess him after, as that of the lessor was before the execution of the lease. * * * being clothed with the title by virtue of the lease, it belongs to him to pursue such legal remedies as the law has provided for gaining it, whether few or many."

The foregoing case was cited with approval in *United Merchants' Realty and Improvement Co.* v. *Roth* (193 N. Y. 570, 576–577) in which latter case the court at page 577, among

other things, said: " The new lessee, and not the landlord, being thus subjected to all the inconveniences and damage .occasioned by the holding over, he ought to have the same right that the landlord would possess were it not for the new lease."

The evidence shows that claimant's lessor had a right of possession of said premises upon the expiration of the lease of the State of New York on February 28, 1946, at 12 o'clock noon. By the lease between claimant and his lessor, claimant was given the right of possession as of March 1, 1946. Claimant's remedy was against the State which, as hereinbefore set forth, was holding over and keeping claimant out of possession. We conclude, therefore, that claimant is the proper claimant herein. (*United Merchants' Realty and Improvement Co.* v. *Roth, supra; Mechanics' and Traders' Fire Insurance Co.* v. *Scott,* 2 Hilt. 550; *Borrello* v. *Brown,* 198 N. Y. S. 236; *Teitelbaum* v. *Direct Realty Co.,* 172 Misc. 48; 1 McAdam on Landlord and Tenant [5th ed.], [1934], pp. 428–430.)

Since we have determined that the claimant is the proper claimant and that his notice of intention to file a claim was properly filed, there remains but to discuss the amount of damages to be awarded to claimant. In this connection we discuss only those items which the State resists, to wit: The awarding of damages for any amount in excess of the sum of $275 under item (a) aforesaid, amounting herein to the sum of $185.59, and the awarding of any damages under subdivision (g) which reads as follows: " g. Loss of Profit in Business * * * $325. This item is estimated on earnings from the previous three months' period and was occasioned in part by the inability of the claimant to leave the leased premises during such time as the contractor and/or his employees were working thereon and while records belonging to the aforesaid Division of .Placement and Unemployment Insurance were located on the premises." (Claim, par. 9, subd. g.)

In actions in tort, there are certain well-settled and universally recognized rules relating to damages recoverable. The person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events, whether the damages could or could not have been foreseen by him. The damages cannot be remote, contingent or speculative. They need not be immediate, but need to be so near to the cause only that they may be reasonably traced to the event and be independent of other causes. The

fact that they cannot be measured with absolute mathematical certainty does not bar substantial recovery if they may be approximately fixed. While these rules are generally understood, difficulties arise in their application to the peculiar facts involved in a particular case before the court. (*Steitz* v. *Gifford,* 280 N. Y. 15, 25 C. J. S. Damages, § 80.)

Both of the contested items involve the right on the part of the claimant to recover amounts claimed to be profits, the recovery of which depends upon there being established some reasonable basis for their computation; and an allowance therefor cannot be made on the basis of pure guesswork or conjecture. (*Steitz* v. *Gifford, supra; Lahr* v. *Tirrill,* 249 App. Div. 667, revd. 274 N. Y. 112; *Wolff* v. *Hvass,* 11 Misc. 561, affd. 159 N. Y. 551; *Griffin* v. *Colver,* 16 N. Y. 489, 491.) Loss of profits consequent upon a tort as well as a breach of contract are allowed, provided they are such as might naturally be expected to follow from the wrongful act, and are certain both in their nature and in respect to the cause from which they proceed. (*Schile* v. *Brokhahus,* 80 N. Y. 614, 620.)

Upon the trial we expressed the opinion that no damages could be awarded under said subdivision (g) because of their speculative nature, and we now reiterate that opinion with reference to said damages because we feel that that part of claimant's claim rests entirely upon surmise, conjecture, and speculation, and that there is no way in which we can intelligently determine and award any sum thereunder.

We consider now the disputed item of $185.59 claimed under subdivision (a) aforesaid as amended. The record does not sustain claimant on this demand, and we refer to it to amplify this statement. The following appears in the direct examination of claimant: " Q. The first item of damage that you allege to have suffered is a loss of $275.00 as a result of additional expense to this contractor? A. Yes. Q. Will you explain how that figure was arrived at? A. At the time of our conversation in regard to our contract, which was entered into with the contractor, when he was stopped on the morning of March 1st, 1946, he attempted to withdraw from the premises with this notice that he would return to the premises when the premises or job was available, but that I would be penalized with the condition of the weather. I *agreed* that if he would stay on the job that I would be responsible for any additional cost incurred by any inconvenience which occurred by the failure of the U. S. E. S. (Emphasis supplied.) Q. There came a time

after the job was completed when you asked Mr. Bennett for a statement as to this additional expense? A. Yes. Q. And he gave you a statement? A. Yes, of $275.00. Q. I show you, Mr. Nodine, what purports to be such a statement and ask you if that is the one you received? (indicating). A. Yes, that is the one we received. Mr. Hills: I offer it in evidence. (indicating). The Court: Received. (Received in evidence and marked Claimant's Exhibit No. 7 — Claim No. 28290)." Again the following appears in the direct examination of Walter H. Bennett, the contractor herein: " Q. I show you Claimant's Exhibit 7 and ask you if that is the bill which you rendered to Mr. Nodine for additional compensation on your contract? (indicating). A. Yes, sir, but I didn't figure up the cost day by day. He said, how much do you think you are going to lose, and I said, $275.00 at least. That is actually there was more that I paid my men." Exhibit 7 is dated May 7, 1946, and bears the following typewritten statement on its face: " Additional construction cost due to the continuing occupancy of the U. S. Employment service on and after, March 1, 1946, $275.00". As appears from the exhibit, it was prepared some time after the completion of the work required to be performed, and presumably the amount demanded therein was in conformity with the stipulation of the parties.

We are of the opinion from the foregoing testimony that claimant thereby, by agreement, limited the extent of his liability to the contractor under that particular item to $275, and that said agreement measures the extent of the State's obligation also, and must be resorted to for the purpose of determining the limit for which the State may be held liable. (*General Supply & Constr. Co.* v. *Goelet,* 241 N. Y. 28; *New York Dock Co.* v. *City of New York,* 246 App. Div. 620; *Darrow* v. *Cornell,* 12 App. Div. 604.) It is stated in *McCready* v. *Lindenborn* (172 N. Y. 400, 409) that " * * * [when the parties by their contract provide for the consequences of a breach, lay down a rule to admeasure the damages and agrees when they are to be paid, the remedy thus provided must be exclusively followed." In the instant case, claimant and his contractor did more than just lay down a rule to measure the damages and to agree when they were to be paid. They actually agreed upon the amount thereof.] Assuming that there were a factual basis (which we have already determined herein there is not) for a finding as to loss of profits under this particular item of alleged damage, we find, however, no such basis upon which to determine the reasonableness thereof.

We are, therefore, of the opinion that claimant is entitled to recover herein the sums demanded under paragraph 9 subdivisions (b) through (f), and in addition thereto, the sum of $275 under subdivision (a) of said paragraph, and in an accompanying decision we are making an award therefor.