Leonard H. Sandler, J.
Plaintiff, who had signed a lease for her occupancy of a certain apartment at 420 East 55th Street, N. Y., on October 1, 1967, here sues the prior tenant for damages allegedly sustained when that tenant failed to vacate the apartment until October 7, 1967. In addition, plaintiff sues for damages allegedly sustained as a result of her inability to enter the apartment until October 16, 1967, a period of time supposedly required by the landlord to put the apartment in a condition appropriate for plaintiff’s occupancy.
The defendant acknowledged holding over until October 7, 1967, explaining (without contradiction) that he had previously *629 executed a lease on another apartment calling for occupancy on October 1, 1967, but was prevented from moving in because of the failure of the tenant occupying the apartment leased by the defendant to vacate those premises.
It was intimated that this other tenant had “held over” because of a comparable situation affecting an apartment he in turn had leased. The likelihood of still other previous links in the chain was suggested by the testimony, but the matter was not pursued further.
It is hard to avoid the conclusion that the situation developed by the testimony is peculiar to urban society in our time. Precise timing in moving to and from a number of apartments by a long line of family units, who are personally unknown to each other, is often essential to prevent one, and possibly many, from being placed in the unhappy role of “ holdovers ”. Implicit in plaintiff’s case was the thesis, clearly sanctioned by legal authority, that defendant’s legal duty was to remove with his family from the apartment on the expiration date, finding, if necessary temporary accommodations elsewhere, and suing to recover from his ‘ ‘ holdover ’ ’ the damages suffered.
The principal question presented at the trial related to damages. The defense claimed that plaintiff was entitled to the reasonable value of the premises (already recovered by her from the landlord by way of a deduction from her rent), and to no more. Although the defense correctly stated the traditional view of damages in this area, a number of cases have firmly established the availability of special damages in proper cases in suits against holdovers. (See Ann. 32 ALB, 2d 582, 585, 586, 588-593, 599-607, Measure of Damages for Tenant’s Failure to Surrender Possession of Bental Premises.)
By analogy to cases in which a holdover has occurred because of serious illness, I have seriously considered denying any special damages where, as here, the holdover was caused by the failure of a third party to remove from premises duly rented by the party holding over. (Matter of Weinberg, 177 Misc. 587; Herter v. Mullen, 52 App. Div. 325.)
Not without serious reservations, I have concluded there should be no absolute barrier against special damages in the present kind of situation because of the significant community interest in limiting the harm by encouraging the first tenant adversely affected by a holdover to seek temporary accommodations rather than spread the disruption to an ever widening circle.
The theoretical basis for the award of damages in this area has received comparatively little attention, most cases handling *630 the matter in terms of the particular facts. The leading New York case Nodine v. State of New York (192 Misc. 572, 577) assumed that the rules prevalent in tort actions are applicable. The matter seems less clear to me.
In my view, the action with which we are concerned sounds in both tort and contract, and while the normal rule in such situations is to apply the standard more favorable to the injured party, i.e., the tort standard (5 Corbin, Contracts, § 1016). I am inclined to the view that the contract approach is a fairer one under the facts before me. The critical distinction of course is that damages in contract actions are limited to items that the parties had reason to foresee. (See 5 Corbin,. Contracts, § 1019.) While the practical difference is at best minor in the instant case, and perhaps nonexistent, it might easily become important in other factual situations.
Most cf the items of damage here sought do not require extended discussions.
The alleged loss of income is clearly too speculative even under the standard of the Nodine case itself (cf. Ann. 32 ALR 2d 586). The expenses of living at the Williams Club (to which plaintiff repaired) whether considered in terms of rent or food, were not shown to be greater than the expenses of living at the apartment, for which plaintiff received a rebate. It is therefore unnecessary to consider plaintiff’s obligations to minimize expenses in securing other lodgings. (Cf Meyer v. Succession of McClellan, 30 So. 2d 788 [La.].) There is no relevant authority permitting recovery of legal expenses in connection with a holdover. (See Airways Supermarkets v. Santone, 107 N. Y. S. 2d 187.) Nor do I see any basis for recovery of payments to a maid during the period on the theory that plaintiff could not use her services but was morally required to pay.
The item most clearly recoverable is the money expended for removal of furniture to the warehouse and for storage. The total of such items that were proved was $29.43. Although it seems likely that additional costs were incurred in connection with that aspect, the proof submitted failed to establish them.
The only items for which I am inclined to deny recovery that would present a close question under the tort measure of damages are the expenses incident to placing the plaintiff’s cat in a kennel and the total taxi fares to the building to pick up mail. I find that the defendant had no reason to foresee these items and accordingly must deny their recovery.
In my view of the facts and the controlling rules, it is unnecessary to determine the defendant’s fault if any in the delay in *631 plaintiff’s moving into the apartment from October 7, 1967 to October 16,1967.
Accordingly, I find for the plaintiff for $29.43, with interest from October 1,1967.