OPINION OF THE COURT
Charles E. Ramos, J.
By reason of the present real estate market conditions prevalent in Manhattan’s central business district, commercial tenants are increasingly holding over past the expiration dates of their leases as they attempt to find new locations that they can afford. This case arises out of such a situation in which the circumstances have been complicated by the landlord’s claim that it suffered damage well beyond the normal increase in rent (use and occupation).
This matter was tried before the court without a jury and presents two issues for the court’s consideration. They are: (1) must a landlord mitigate its damages if the damages it seeks are consequential in nature, and (2) does the tenant’s act of notifying the landlord of an intended holdover thereafter require the landlord to inform the tenant in a timely *945 fashion of the consequences of its holdover, if those consequences would, in the ordinary course of affairs, be unforeseen.
The petitioner seeks to recover consequential damages in the amount of $30,782.80 caused by respondent’s holding over for 20 days beyond the expiration of its tenancy as provided by a written lease.
On or about May 15, 1967 petitioner entered into a written lease with respondent which was due to expire on December 31, 1982. In a hand-delivered letter dated September 21, 1982, the respondent informed the petitioner that it would not be able to vacate the premises until sometime beyond the expiration date. The petitioner did not answer respondent’s letter of September 21, 1982 and there were no further communications between the parties until December 20, 1982. In a letter from its attorneys, petitioner finally acknowledged having received notification of respondent’s intention to hold over (letter of Sept. 21, 1982) and informed respondent of the existence of a lease with a new tenant (First Manhattan Co.) encompassing not only the space occupied by respondent on the 31st floor but also the entire 30th floor. Petitioner’s attorneys further informed respondent that pursuant to this lease First Manhattan Co. was not to commence paying rent until it had received occupancy of the entire space (the 30th floor plus the space occupied by respondent on the 31st floor). Thus, according to petitioner, in the event of a holdover by respondent, it would incur damages not only for the difference in rent between what respondent was paying and what First Manhattan Co. was to pay for the same space, but also for the loss of rent for the entire 30th floor for the period of respondent’s holding over. It is this “lost rent” that petitioner now seeks, respondent having already paid $997 per day for use and occupancy of the space in which it held over for 20 days.
Petitioner takes the position that it was under no duty to advise the respondent of the consequential damages that it would incur in the event of a holdover by respondent. In so doing petitioner relies on several cases wherein it was held that the nature of the landlord-tenant relationship is contractual and thus it is not incumbent upon the landlord to *946 give the tenant notice to quit. (Adams v City of Cohoes, 127 NY 175; Matter of Vinson v Greenburgh Housing Auth., 29 AD2d 338; Cox v Sammis, 57 App Div 173.) Though this may be the holding of these cases it is not the issue in the case presently before this court. It is quite clear that the petitioner, having been put on notice by the respondent of the likelihood of a holdover, acted in an irresponsible manner in failing to communicate with its tenant. That petitioner was made aware of respondent’s intention to hold over in the subject premises by respondent’s letter of September 21, 1982 cannot be contested. It was after receiving notification of such that petitioner first entered into the lease agreement with First Manhattan Co. which provided that all the space be vacant or no rent would be paid on any portion of the space, and neglected to alert respondent, its tenant, of this pertinent development.
A landlord such as petitioner would certainly have reason to know that the usual measure of damages arising out of a holdover would be limited to the reasonable value of use and occupancy of the subject premises for the holdover period. Furthermore, petitioner should have realized that consequential damages, such as those claimed, would normally be unforeseen by a tenant. In light of the letter of September 21, 1982 the petitioner should have notified respondent, as soon as possible, of the uncommon terms of the new lease and of the consequences of a holdover. That petitioner should have proceeded in this matter is evident by its letter of December 14, 1982 (which was not received by respondent until December 20, 1982). In this letter petitioner finally informed respondent of its new lease with First Manhattan Co. and the damages that it would suffer as a result of any holdover by respondent. This was the proper response to respondent’s letter of September 21, 1982 except for the fact that petitioner delayed its response for almost three months from the time it was made aware of respondent’s potential holdover. Given this failure on the part of petitioner to inform respondent of its new lease with First Manhattan Co. and the concomitant damages that it would suffer in the event of a holdover, respondent could hardly be held liable for such unforeseeable damages.
*947 Petitioner also urges this court to find that respondent is liable in tort for all damages sought by petitioner. According to petitioner’s analysis a tenant who holds over is a trespasser and as such is liable in tort for all damages which occur as a result of the holdover. Petitioner cites Nodine v State of New York (192 Misc 572, 577), referring to it as the “leading case in the area”: “In actions in tort, there are certain well-settled and universally recognized rules relating to damages recoverable. The person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events, whether the damages could or could not have been foreseen by him. The damages cannot be remote, contingent or speculative. They need not be immediate, but need to be so near to the causes only that they may be reasonably traced to the event and be independent of other causes” (emphasis added).
Even if this court adopts the position stated in Nodine (supra) and advocated by petitioner it would not be warranted in granting the damages sought by petitioner. The damages suffered by petitioner did not come about in the “usual course of events”, nor did they occur “independent of other causes”. In a holdover situation the damages in the “usual course of events” and “independent of other causes” would be limited to the reasonable value of use and occupancy for the amount of time the tenant remained in the subject premises. In the present situation the damages claimed by petitioner go far beyond the reasonable value of use and occupancy, did not arise out of the “usual course of events” and cannot be said to be “independent” of all causes other than respondent’s holdover.
Petitioner’s lease with First Manhattan Co. with its “all or nothing” provision, greatly increased petitioner’s damages above normal use and occupancy.
Also, whether the analysis is based in contract or tort it is a well-settled principle of law that one has a duty to mitigate damages. (Restatement, Contracts 2d, § 350, Comment b; Restatement, Torts 2d, § 918, subd [1], Comment a.) This duty to mitigate damages has been extended to the landlord-tenant relationship. (Kershner v Rubin, *948 NYLJ, May 4, 1983, p 11, col 1.) Petitioner failed to mitigate in a timely fashion. Had petitioner answered respondent A. T. Kearney’s letter of September 21, 1982 in a prompt fashion, rather than choosing to do nothing until shortly before the expiration date of the lease, petitioner could have arranged to move respondent to other space (as was eventually done) prior to the expiration of the lease and thus avoided the damages now sought.
In any event it is clear that it was the petitioner, and not the respondent, who created the risk of incurring such damages as are now claimed in this action. Petitioner, after having been notified by respondent that it would hold over, entered into the lease with First Manhattan Co., which lease provided that First Manhattan Co. was not obligated to pay rent until it received possession of the entire premises. This lease was negotiated and agreed to by petitioner with full knowledge of the potential consequences given respondent’s previously stated intent to hold over. Furthermore the lease with First Manhattan Co. also provided that the payment of rent would commence on the earlier of (1) three months after the commencement date of the lease or (2) on the date the tenant first occupied the demised premises for conducting its business. Petitioner failed to prove that three months after respondent vacated the premises First Manhattan commenced paying rent. Upon this record it has not been proven that respondent’s act of holding over caused the damages now sought by petitioner.
Accordingly, final judgment is granted in favor of respondent A. T. Kearney, Inc.