**650 PARK AVENUE CORPORATION, Plaintiff,**

v.

**Maria McRAE, Defendant.**

**No. 86 Civ. 4047 (RLC).**

United States District Court, S.D. New York.

June 22, 1987.

---

Gerstein & Churchill, P.C., New York City, for plaintiff; Anthony Motta, of counsel.

Joseph M. Aronow, New York City, for defendant; Charles C. Luetke, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff in this diversity action is 650 Park Avenue Corporation ("the Co-op"). Organized under the laws of the State of New York, the Co-op owns and maintains the cooperative apartment building at 650 Park Avenue in New York City. Defendant Maria McRae is a citizen of the State of Texas, with a residence in Houston. She owns Apartment 2–E in plaintiff's building, where she stays during her visits to New York City.

The present dispute concerns a maid's room on the ground floor of the building. McRae purchased Apartment 2–E in July, 1981, and at about that time she sought to purchase the maid's room for her full-time housekeeper's use. However, the room was reserved as part of the building's common area and was not for sale without the consent of the shareholders. McRae settled for a monthly tenancy for her housekeeper, at a rent of $300 per month.

In early October, 1984, the Co-op informed McRae that it had entered into an agreement with several doctors to sell the maid's room, along with other areas on the ground floor, as a professional office space.

On October 22, 1984, plaintiff further notified McRae that it was electing to terminate the monthly rental agreement as of November 30, 1984. Upon the request of McRae's lawyer, however, the parties agreed in a writing dated November 14, 1984, that McRae would be allowed through December 31, 1984, to vacate the room. In return for the extension of time to vacate, McRae agreed both to remove all of her maid's effects from the room on or before December 31, 1984, and to consent to entry of a final order against her in summary eviction proceedings.

When McRae did not vacate the maid's room by December 31, 1984, the Co-op commenced an eviction proceeding in the Civil Court of the City of New York. McRae did not consent to entry of judgment against her. Instead, she initiated a separate proceeding in the Supreme Court of the State of New York, seeking to enjoin the Co-op from prosecuting the eviction action or from terminating the tenancy.

The New York State Supreme Court, Justice Blyn presiding, declined to interfere with the pending summary proceeding, noting that McRae was free to raise any defenses, equitable or otherwise, before the New York City Civil Court. *McRae v. 650 Park Avenue Corp.*, No. 2738/85 (Sup.Ct. N.Y. County Apr. 8, 1985).[1] Then, after trial on the merits, Judge Dubinsky of the New York City Civil Court granted final judgment of possession to the Co-op. Judge Dubinsky explicitly rejected McRae's defense that she was fraudulently induced to agree to vacate the maid's room. *650 Park Avenue Corp. v. McRae*, No. L & T 100491/84, slip op. at 2 (N.Y. City Civil Ct. July 5, 1985). He ruled that the Co-op had the right unilaterally to terminate the tenancy as it did: He found that the room was not subject to rent stabilization under the Emergency Tenant Protection Act of 1974, Administrative Code of the City of New

York, § YY51–3.0; and he also found that the Co-op had not contravened the provisions of N.Y. Gen. Bus. Law § 352 *et seq.*, in particular section 352–eeee ("Conversions to cooperative or condominium ownership in the city of New York"), even assuming that those provisions were applicable. *650 Park Avenue Corp. v. McRae, supra*, No. L & T 100491/84, slip op. at 2 (citing *Cohen v. Brown, Harris, Stevens, Inc.*, 64 N.Y.2d 728, 485 N.Y.S.2d 745, 475 N.E.2d 116 (1984)). Judge Dubinsky's decision was affirmed by the Appellate Term of the Supreme Court of the State of New York. *650 Park Avenue Corp. v. McRae*, No. 86–104 (App. Term 1st Dep't Apr. 8, 1986).

McRae surrendered possession of the maid's room on August 1, 1985. The Co-op proceeded on September 30, 1985, to execute a closing on the sale of the office space.

In the present action, the Co-op claims damages resulting from McRae's failure to vacate the maid's room by December 31, 1984. It alleges that the prospective purchasers of the office space were ready, willing, and able to close on the sale by March 1, 1985. It seeks lost maintenance payments of $1,850 per month for the months March through September, 1985. In addition, plaintiff alleges that it had planned to pay off a mortgage on the apartment building with the proceeds of the sale. It claims interest payments of $7,200 per month which it continued to pay on the mortgage during the seven-month period. Finally, plaintiff seeks attorney's fees of $29,427.29, allegedly incurred in the various proceedings in New York state courts. McRae answers that none of her conduct was in breach of any agreement, and she counterclaims for damages for loss of use of the maid's room. The Co-op now moves for summary judgment on each of its claims.

---

**1.** Justice Blyn's memorandum decision reads in part:

This is yet another landlord-tenant dispute which belongs exactly where defendant-landlord seeks to proceed—in a summary proceeding in the Civil Court—where that court's special procedures and expertise will yield an

expedited, just determination.... Any equitable or other defenses available to plaintiff may be raised in the summary proceeding, and the Civil Court will be able to make a full determination of the rights of the parties. *Id.*, slip op. at 2 (citation omitted).

## DISCUSSION

The motion for summary judgment will be granted only if no material fact is genuinely at issue and the Co-op is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

McRae attempts to raise a number of factual issues relating to both her defenses and her counterclaim. She argues that she purchased Apartment 2-E on the condition (apparently unstated) that she would have use of the maid's room. Similarly, she alleges, the Co-op assured her that she would be given a right of first refusal should the room be put up for sale. In addition, McRae contends that she agreed in writing to vacate the room only after the Co-op informed her that it was legally entitled to sell the room. Thus, she concludes, both her purchase of Apartment 2-E and her agreement to vacate the maid's room were fraudulently induced.

None of these contentions presents a genuine issue of fact, because the principle of collateral estoppel precludes consideration of any of them. Stated otherwise, her contentions already have been fully litigated and resolved in the courts of the State of New York.

■ Collateral estoppel is a limited application of *res judicata* doctrine. *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948). Both the broader doctrine and its narrower corollary serve to prevent duplicative litigation, as both rules are aimed at conservation of judicial resources and maintenance of social order through finality in legal relations. *See id.*

■ The broader doctrine of *res judicata* prohibits relitigation of the same cause of action. *Id.* at 597, 68 S.Ct. at 719. More precisely, the doctrine holds that a final judgment, entered on the merits of a cause of action by a court of competent jurisdiction, is binding on the parties and on those in privity with them. *Id.* As such, the judgment is conclusive "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Nevada v. United States,* 463 U.S. 110, 130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (quoting *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1877)).

■ The narrower principle of collateral estoppel comes into play in a suit involving a cause of action different than the one already tried. In such a case, the principle precludes litigation not of such matters as *might* have been tried, but only of those issues which were *actually* tried and decided and were essential to the earlier judgment. *Sunnen, supra,* 333 U.S. at 597–98, 68 S.Ct. at 719–20; *Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 726–28 (2d Cir.1981).

■ The Co-op urges that McRae's defenses are precluded by *res judicata* because, it says, the causes of action in the New York courts and in this court are identical. This argument is somewhat self-defeating: If the causes of action there and here really were identical, McRae's defenses would true enough be precluded—but the Co-op's claims would be precluded as well.

As it happens, the causes of action are not identical. This conclusion is less than obvious, in no small part because the term "cause of action" is itself imprecise and subject to varying interpretation. *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). New York law severally provides for identity of causes of action in terms of (1) the effect of a subsequent judgment on the rights established by the prior judgment; (2) the evidence needed to maintain each action; or (3) the facts and issues present in each case. *Id.; Herendeen v. Champion International Corp.,* 525 F.2d 130, 133–34 & nn. 5–7 (2d Cir.1975). The "crucial element" in each of these formulations, however, is the factual predicate, or underlying nucleus of facts, of each of the two actions. *Expert Electric, Inc., supra,* 554 F.2d at 1234.

The central facts on which Judge Dubinsky based his decision to award possession to plaintiff were the Co-op's termination of the maid's room tenancy on October 22, 1984, McRae's agreement on November 14, 1984, to vacate the room, and her failure on December 31, 1984, to surrender it. These events are at the origin of the cause of action in this case as well. At least as important to this action, however, is a separate, subsequent course of events—McRae's continued occupancy of the maid's room over the months of January through July, 1985. The common law is that holding over beyond the expiration of a lawful tenancy creates a distinct cause of action for each term of the implied tenancy. *See Kennedy v. City of New York*, 196 N.Y. 19, 25, 89 N.E. 360 (1909). Splitting an action into separate claims for separate terms may or may not still be appropriate. It remains true, however, that an action based on a prolonged holdover rests on different facts and law than those at issue in a simple possessory action at the conclusion of a lease term. *Toms Point Apartments v. Goudzward*, 72 Misc.2d 629, 339 N.Y.S.2d 281, 285 (Dist.Ct. Nassau County 1972), *aff'd*, 79 Misc.2d 206, 360 N.Y.S.2d 366 (App.Term 2d Dep't 1973) (holdover tenancy "is a new term for a new period, separate and distinct from that which preceded it"); *United States v. Bedford Associates*, 491 F.Supp. 851, 866 (S.D.N.Y.1980) (Werker, J.), *aff'd in part, rev'd in part on other grounds*, 657 F.2d 1300 (2d Cir.1981),

*cert. denied*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982).[2]

■ Having concluded that *res judicata* is inapplicable to this case, the correlative question is whether collateral estoppel precludes the assertion of any claims or defenses here. Although neither party has seen fit to address this point, McRae's defenses of fraud, in connection with her purchase of Apartment 2–E and her agreement to vacate the maid's room, plainly were litigated in the summary proceeding; and their rejection just as plainly was essential to the Civil Court judgment. *See Tucker, supra*, 646 F.2d at 728. The defenses were raised explicitly in the answer to the petition for eviction. *See* Affidavit of Benjamin Heffner, Oct. 6, 1986, Exh. Q. Judge Dubinsky's decision likewise explicitly addresses and rejects McRae's defenses seriatim. Rejection of the defenses was essential to the judgment, as the defenses put into question the Co-op's rights first to terminate the tenancy and then to enforce McRae's agreement to vacate the room. Consequently, McRae is collaterally estopped from reasserting the defenses now. *See Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500–02, 478 N.Y.S.2d 823, 826–27, 467 N.E.2d 487, 490–91 (1984). *See generally Restatement (Second) of Judgments* § 27, comment j (1982) (issue is "essential" when "recognized by the parties as important and by the trier as necessary to the first judgment").

2. Had the parties not appeared in the state Supreme Court as well as the Civil Court, the Co-op might be entitled to raise its present claims even assuming they arose from the same cause of action as was litigated in the eviction proceeding. Such an exception to the rule of *res judicata* would apply where, notwithstanding identical factual predicates, the jurisdiction or procedures of the first court prevented plaintiff from consolidating its claims for possession and monetary losses, and plaintiff had no other opportunity to raise its unconsolidated claims. *See Restatement (Second) of Judgments* §§ 26(c), 26(d), comment e, Illustration 5 (1982).

Under New York law, and in New York City in particular, an action for possession is to be prosecuted in a summary proceeding in the Housing Part of the New York City Civil Court,

*Tivoli Associates v. Wing*, 122 Misc.2d 901, 471 N.Y.S.2d 1018, 1019–21 (N.Y. City Civil Ct.1984), while an action for damages is to be brought either in a separate part of the Civil Court or in the Supreme Court. *See Morris v. Local 804 Delivery & Warehouse Employees Health & Welfare Fund*, 116 Misc.2d 234, 455 N.Y.S.2d 517, 518–19 (N.Y. City Civil Court 1982). Consolidation of a summary proceeding with a damages action is an abuse of discretion. *Earbert Restaurant, Inc. v. Little Luxuries, Inc.*, 99 A.D.2d 734, 472 N.Y.S.2d 359, 360 (1st Dep't 1984).

The exception to the doctrine of *res judicata* is not applicable here, however, because the parties did appear before the state Supreme Court, and plaintiff has stated no reason why it could not then have raised any unconsolidated claims arising from the first cause of action.

■ McRae argues that she should not be precluded from interposing her defenses because the New York City Civil Court lacked jurisdiction to entertain them. The defenses were in the nature of an application for declaratory relief, she explains, and the Civil Court is without jurisdiction to grant such relief.

Her argument has no merit. The Civil Court's jurisdiction over affirmative equitable claims is narrowly circumscribed. *Monroe v. Jordan*, 121 Misc.2d 757, 467 N.Y.S.2d 768, 770–71 (N.Y. City Civil Ct. 1983). Nevertheless, it extends to all equitable defenses raised in the summary proceeding. N.Y.R.P.A.P.L. § 743 ("The answer may contain any legal or equitable defense, or counterclaim."); *Taub v. Rolfe*, 93 Misc.2d 184, 402 N.Y.S.2d 555, 556 (N.Y. City Civil Ct.1978). As a general matter, in other words, an equitable claim may be used in Civil Court as a "shield [though] not as a sword." *220V Electrical Dealer Supply, Inc. v. Rondat, Inc.*, 111 Misc.2d 100, 443 N.Y.S.2d 632, 633 (Sup.Ct. N.Y. County 1981). If the application of this principle to this case was ever in some way unclear, the New York State Supreme Court resolved that difficulty by stating that "[a]ny equitable or other defenses available to [McRae] may be raised in the summary proceeding." *McRae v. 650 Park Avenue Corp.*, No. 2738/85, slip op. at 2 (Sup.Ct. N.Y. County Apr. 8, 1985). This court is not an appellate tribunal in which to seek review of the decisions of the courts of the State of New York; and it would be particularly inappropriate to second-guess those courts on an issue of New York law. *See Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142–43 & n. 8 (2d Cir.1986), *rev'd on other grounds*, —— U.S. ——, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); 28 U.S.C. § 1738. The defenses that McRae has litigated in the New York courts thus are disregarded.

■ McRae's remaining defense, not previously raised, is that plaintiff's action for damages and attorney's fees fails to state a claim on which relief can be granted. With respect to the Co-op's application for attorney's fees, this defense is well taken. Attorney's fees generally are not awardable in landlord-tenant actions except as provided by statute or by the express terms of a lease. *Enright v. Mintz*, 116 Misc.2d 1084, 457 N.Y.S.2d 180, 181 (N.Y. City Civil Ct. 1982); *see Park South Associates v. Essebag*, 126 Misc.2d 994, 487 N.Y.S.2d 252, 253 (App.Term 1st Dep't 1984) (per curiam); N.Y.R.P.L. § 234. The parties do not allege that either ground for attorney's fees is applicable. The claim accordingly is denied.

The Co-op's application for damages, by contrast, does state a valid claim for relief. Damages for a tenant's holdover occupancy are recoverable on the basis of both statutory and common law. *See 437 Madison Avenue Associates v. A.T. Kearney, Inc.*, 127 Misc.2d 37, 488 N.Y.S.2d 950, 951 (App. Term 1st Dep't 1985) (per curiam); N.Y.R.P.A.P.L. § 601 (in action to recover possession of real property, damages may include "rents and profits" or the value of "use and occupancy"). Although the courts have not taken a uniform approach to the determination of damages, the prevailing view, based on a contractual model, is that, in addition to direct damages, consequential damages are recoverable when "reasonably foreseeable by the breaching party at the time of contract." *A.T. Kearney, supra*, 127 Misc.2d 37, 488 N.Y.S.2d at 951; *see Schreiber v. Kleban*, 63 Misc.2d 628, 312 N.Y.S.2d 1007, 1009–10 (N.Y. City Civil Ct. 1970); *see also Horan v. Rothenberg*, 55 Misc.2d 155, 284 N.Y.S.2d 667, 668 (Dist.Ct. Nassau County 1967) (awarding damages for use and occupancy and "such other damages as reasonably flow from the defendant's continuing in possession"). *But see Nodine v. State of New York*, 192 Misc. 572, 79 N.Y.S.2d 834, 839 (Ct.Cl.1948) (tenant liable in tort as a trespasser for all damages resulting directly from holdover).

■ The damages that the Co-op claims—the lost maintenance payments and the additional mortgage interest—are consequential inasmuch as they are not related directly to the use and occupancy of the maid's room but are a result of McRae's holding over. Defendant does not dispute that she reasonably could have foreseen

those damages, and that indeed she had actual notice of them. She was notified by letter dated October 10, 1984, that the maid's room had been sold as part of the doctors' office space. *See* Affidavit of Benjamin Heffner, July 30, 1986, Exh. F.[3] Later in October or in early November, the Co-op's vice-president informed McRae's attorney that the proceeds from the sale of the office space were to be used to pay off a mortgage on the apartment building. *Id.* ¶ 11. An affidavit filed on February 8, 1985, in the action commenced by McRae in the New York State Supreme Court, also set forth the Co-op's intention of paying off the existing mortgage with the proceeds of the sale. *Id.*, Exh. J at 7.[4] The only question as to McRae's liability is whether any of these several provisions of notice was timely—whether, in other words, she should reasonably have foreseen the damages at the time of contracting. *See A.T. Kearney, supra,* 127 Misc.2d 37, 488 N.Y. S.2d at 951.

■ At first glance, the relevant time of contracting might appear to be October, 1981, when the parties initially agreed to the maid's room lease. The lease was either modified or superseded, however, by McRae's agreement to vacate the maid's room, dated November 14, 1984. The later date is the relevant one for purposes of determining what McRae should reasonably have anticipated, because even if her agreement to vacate merely modified the terms of the lease, it undeniably extended her rights—and responsibilities—under the tenancy. *Cf. Spang Industries v. Aetna Casualty & Surety Co.,* 512 F.2d 365, 369

(2d Cir.1975) (where material contract term was initially left indefinite, knowledge of consequences of breach is imputed as of date of agreement to term rather than earlier date of formation of contract). As of November 14, 1984, she should have foreseen the damages that holding over would cause.

■ As a practical matter, the time and manner in which notice was given to McRae does not present the close question of foreseeability that has arisen in other cases. In *A.T. Kearney, supra,* 127 Misc.2d 37, 488 N.Y.S.2d at 950–51, a landlord notified its tenant only 11 days prior to the expiration of their lease that the tenant's space had been demised to a third party. The tenant, for its part, had stated three months earlier that it was working on construction of its new space and that it would relocate as close to the end of the lease term as possible. *Id.* Similarly, in *Schreiber, supra,* 63 Misc.2d 628, 312 N.Y. S.2d at 1008–09, an incoming tenant sued a holdover tenant who had not moved out because his next apartment was likewise being held over.

In both cases, recovery of consequential damages was at least partially denied on the ground that the plaintiff's losses were not foreseeable. Although, technically speaking, foreseeability is determined with reference only to the tenant's knowledge upon entering the lease, the tenant's good faith attempts to relocate, and external constraints preventing the tenant from doing so, were implicitly or explicitly taken into account. *See A.T. Kearney, supra,*

---

**3.** The letter reads in part:
The doctor's office which adjoins the [maid's] room on the ground floor has been sold. The sale includes the space occupied by your maid. Accordingly, it is necessary to terminate the monthly tenancy by which your maid occupies these premises. It is required that you vacate the maid's room on the ground floor as at [sic] November 30, 1984.
*Id.*

**4.** The affidavit reads in part:
Defendant has contracted to sell the Premises for $640,000; pursuant to that contract, defendant is to deliver possession of the Premises to the purchasers on April 1, 1985. Accordingly, if plaintiff succeeds in delaying defend-

ant's prosecution of the holdover proceeding and manages to maintain possession of the Premises at issue beyond the closing date, plaintiff will suffer significant losses: the $640,000 to be gained from the sale of the space including the Premises at issue, and an additional $100,000 in interest on the exiting [sic] mortgage at 13% [sic], which was to be largely satisfied by the proceeds from the sale of the doctor's office, will be incurred by reason of the failure of the transfer of title to the space to the purchasers on April 1, 1985. *Id.* (photocopy of Affidavit of Benjamin Heffner, Feb. 8, 1985, ¶ 11, *McRae v. 650 Park Avenue Corp.,* No. 2738/85 (Sup.Ct. N.Y. County)).

127 Misc.2d 37, 488 N.Y.S.2d at 951 (consequential damages "should not be awarded in the absence of timely notice to [tenant]"); *Schreiber, supra,* 63 Misc.2d 628, 312 N.Y.S.2d at 1009 (allowing consequential damages as a deterrent to holdover, but expressing reservations about such an award where holdover is partially caused by third party).

Consideration of these additional factors is sensible because a holdover action sounds in tort as well as contract. *Id.,* 312 N.Y.S.2d at 1010; *see 437 Madison Avenue Associates v. A.T. Kearney, Inc.,* 120 Misc.2d 944, 466 N.Y.S.2d 931, 933 (N.Y. City Civil Ct.1983), *aff'd on other grounds,* 127 Misc.2d 37, 488 N.Y.S.2d 950 (App. Term 1st Dep't 1985) (per curiam) (considering damages issue under both contract and tort theories). The hybrid nature of the action means that a holdover tenant's anticipation of damages is at least as important after the rental term has ended as it was before the term began. Indeed, when possession is willfully withheld far beyond the expiration of the lease, it would seem appropriate to dispense altogether with the requirement that damages be foreseeable at the start of the lease: The ongoing, unauthorized holding over must at some point be deemed a wrong wholly distinct from the breach of the lease. *See Kennedy v. City of New York,* 196 N.Y. 19, 23–25, 89 N.E. 360 (1909); *see also Industrial Development Foundation v. United States Hoffman Machinery Corp.,* 16 A.D.2d 600, 229 N.Y.S.2d 857, 858–59 (4th Dep't 1962) (per curiam) ("continued possession by the defendant was a new wrong").

Exactly when a breach of a lease ends and a trespass begins need not be defined in this case because McRae does not deny that she had notice of plaintiff's potential damages when she agreed to vacate the maid's room. Even assuming, however, that her actual notice of the Co-op's imminent damages was somehow inadequate, she, unlike the holdover tenants in *A.T. Kearney* and *Schreiber,* has alleged no extenuating circumstances which would have prevented her from vacating the room as promised. She apparently made no at-

tempts or preparations to relocate at any time during the pendency of the summary proceeding, even after the Co-op's potential damages were made part of the record in the action in the New York State Supreme Court. Her only explanation for her failure to vacate is the set of defenses which Judge Dubinsky rejected. Moreover, McRae herself attests to the availability of alternative accommodations for her housekeeper: She states that since July 31, 1985, when she surrendered possession, she has rented a room at the nearby Golden Tulip Barbizon Hotel. Affidavit of Maria Z. McRae, Sept. 11, 1986, ¶ 44. Collectively, these facts simply reconfirm that McRae persisted in her occupancy of the room in the face of plaintiff's monetary losses. As a matter of law, plaintiff is thus entitled to judgment on the issue of McRae's liability.

■ By contrast, only some elements of plaintiff's damages are beyond dispute. The court may infer from the papers presently on submission, in particular, from the face of the Co-op's contract of sale of the doctors' offices, that maintenance payments for the office space would have accrued at the rate of $1,850 per month. *See* Affidavit of Benjamin Heffner, July 30, 1986, Exh. E. The rate of monthly mortgage interest of 13.5 percent (or $7,200 per month, based on a $700,000 principal) is similarly set forth on the face of the mortgage agreements. *Id.,* Exh. O.

■ On the other hand, there is a discrepancy about the date on which plaintiff began to incur damages. Although plaintiff now states that damages began in March, the affidavit filed in the state Supreme Court sets April 1, 1985 as the date of sale of the office space. *See* note 4 *supra.* In a letter to McRae dated July 9, 1985, Heffner repeated that April 1, 1985, was the agreed date for the sale, and thus the start of the damages period. Affidavit of Benjamin Heffner, July 30, 1986, Exh. M at 2. The contract of sale itself lists the closing date for the sale as "April 1, 1985 at 10 A.M., . . . unless extended from time to time . . . ." *Id.,* Exh. E at 2. The lease does not provide for an earlier closing

date,[5] and even if it had, the single relevant fact is that McRae was given notice of a sale to occur on April 1, 1985. That date is controlling for purposes of the damages calculation.

■ The ending date of the damages period is at this point undeterminable. The parties do not dispute that the office space was sold on September 30, 1985, and that by the terms of the lease, 30 days notice was required to schedule a closing date. However, approximately 60 days passed from the date McRae vacated the maid's room to the date of sale of the doctors' offices. The Co-op was under an obligation to mitigate its damages during this period. *437 Madison Avenue Associates v. A.T. Kearney, Inc.*, 120 Misc.2d 944, 466 N.Y. S.2d 931, 933–34 (N.Y. City Civil Ct.1983), *aff'd*, 127 Misc.2d 37, 488 N.Y.S.2d 950 (App. Term 1st Dep't 1985). At this point, the record reflects no reason why plaintiff could not have concluded the office space sale on September 1, 1985, more than 30 days after the maid's room was made available. In order to recover damages for the month of September, plaintiff will have to establish additional facts showing that it made reasonable albeit unsuccessful efforts to execute the closing on the sale prior to September 30, 1985. *See Restatement (Second) of Contracts* § 350 (1981).

■ In addition, McRae claims that she is entitled to set off rent paid for the maid's room against plaintiff's damages. Such a set-off is appropriate in this case, as plaintiff ought only to be restored to the position it would have been in had McRae vacated the maid's room as she had agreed to do. *See Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir.1984); *cf. Miceli v. Riley*, 79 A.D.2d 165, 436 N.Y.S.2d 72, 75 (2d Dep't 1981) (awarding set-off for the value of improvements made in good faith). However, McRae has yet to specify how much rent she paid during the period for which the Co-op claims damages, and she must establish the fact of such payments in order to be entitled to a set-off.

■ The final matter before the court is McRae's counterclaim based on loss of use of the maid's room. As explained above, she had no right to use of the room after December 31, 1984. The counterclaim is therefore dismissed.

## CONCLUSION

The Co-op has demonstrated that as a matter of law McRae is liable for its loss of maintenance payments and additional interest charges caused by her failure to vacate the maid's room on time. Plaintiff accordingly is entitled to partial summary judgment on the issue of liability. *See* Rule 56(c), F.R.Civ.P. (summary judgment may be rendered on issue of liability alone); *Aetna Life & Casualty Co. v. McCabe*, 556 F.Supp. 1342, 1348–49 (E.D.Pa.1983) (summary judgment appropriate where collateral estoppel precludes relitigation of a defense). That plaintiff's claim for attorney's fees lacks merit also is clear as a matter of law and that claim is denied.

A number of remaining factual issues preclude determination of the damages to which the Co-op is entitled. It is beyond dispute that the Co-op's lost maintenance revenues equalled $1,850 per month; that its additional mortgage interest payments equalled $7,200 per month based on the rate of 13.5 percent; and that it began incurring damages on April 1, 1985. Still unresolved, on the other hand, are the extent to which the Co-op could have mitigated its damages and the total rent which may be set off against plaintiff's damages. Because these facts remain at issue, summary judgment on the issue of damages is denied. *See Leasing Service Corp. v. Graham*, 646 F.Supp. 1410, 1415 (S.D.N.Y. 1986) (Leisure, J.).

The parties are directed to file, within two weeks of the date of this opinion, stipulations of fact or, if necessary, supplemen-

---

**5.** Plaintiff apparently selects March 1, 1985, as the closing date on the basis of the following sentence in the lease: "Any closing date other than April 1, 1985 shall be fixed by a 30 day notice given by the Seller either prior or subsequent [to] that date." *Id.* In light of the preceding sentence setting the closing at April 1, 1985, except as extended, plaintiff's position is untenable.

tary affidavits, addressing the outstanding damages issues. If, after these papers are filed, genuine issues of material fact remain unresolved, a hearing on those issues will be held.

IT IS SO ORDERED.