JOHN C. WARD et al., Taxpayers of the Village of Waterloo, Appellants, *v.* JOHN KROPF, as President of the Village of Waterloo et al., Respondents.

Contract — municipality may not utilize work done under void contract without making compensation.

1. Where complete performance is prevented by law, circumstances may arise where a recovery may be had for benefits conferred by part performance, upon the principle of the maxim that "no one shall be made rich by making another poor." Such a recovery would not be upon the basis of the contract, which is invalidated, but upon an implied agreement, founded upon a moral obligation to account for the moneys or property received.

2. Where a municipal contract for the construction of a sewer system has been declared invalid, owing to a preliminary failure on the part of the authorities to observe a requirement of the Village Law, the contractors have no legal claim against the municipality based upon a partial construction by them of the work. Where, however, the municipality thereafter decides to construct a system of sewers according to the previously adopted plans and specifications, it may not appropriate and utilize the work and materials of · the contractors without coming under an implied obligation to make compensation. It may abandon that portion of the plan without liability arising; but if it does include the sewer work already completed, it takes what is not its property and the ordinary obligation at law will arise to pay for it. The easement of the village in the public streets gave it no title to the sewers which had been constructed therein, and they subserved no street purpose. Invalid as the contract may have been, it operated as a permit or license to the contractors, to that extent that they were not trespassers in what they did in the public streets.

*Ward* v. *Kropf*, 143 App. Div. 919, affirmed.

(Argued December 3, 1912; re-argued January 30, 1913; decided March 11, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 16, 1911, affirming a judgment entered upon a decision of the court on trial at an Equity Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hamilton Ward* for appellants. The judgment should be modified by striking out the second decretal clause thereof so far as the same determines that the defendants Bennett & Shepard have any interest in the labor done upon and material placed in streets of the village of· Waterloo, under the contract, as inconsistent with the findings of the court, and with the first decretal clause of the said judgment adjudging such contract void, and restraining the village from paying anything thereon. (*People* v. *Flagg*, 17 N. Y. 591; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Parr* v. *Vil. of Greenbush*, 72 N. Y.

463; *Dickinson* v. *City of Poughkeepsie,* 75 N. Y. 65; *Smith* v. *City of Newburgh,* 77 N. Y. 130; *Wells* v. *Town of Saline,* 119 N. Y. 280, 297; *People ex rel. Coughlin* v. *Gleason,* 121 N. Y. 631; *Vil. of Fort Edward* v. *Fish,* 156 N. Y. 363; *People ex rel. T. L. W. Co.* v. *Sisson,* 75 App. Div. 138; *W. W. Co.* v. *Long Island City,* 28 App. Div. 78.)

*George E. Zartman* and *Charles A. Hawley* for respondents. The conclusion that the work already done might be utilized by contractors in the performance of new contracts for the construction of the entire work is justified by the facts found. (*People ex rel. Dady* v. *Prendergast,* 144 App. Div. 308; 203 N. Y. 1; *Dillon Cont. Co.* v. *City of New York,* 64 Misc. Rep. 471.) The village does not own the work already done. (*Durkin* v. *S. F. & W. R. R. Co.,* 48 Hun, 615; *Reger* v. *S. F. & W. R. R. Co.,* 48 Hun, 615.) The easement of the village in the street for highway purposes does not give it title to the work already done. (*Vil. of Canandaigua* v. *Hays,* 90 App. Div. 336; *Gordon Malting Co.* v. *Bartels Brewing Co.,* 206 N. Y. 539.) The Village Law expressly provides that a sewer constructed at private expense shall be paid for if used by the village. (Cons. Laws, ch. 64, § 262.) If the village takes possession of and utilizes the sewer already laid, then the contractors and their assigns would occupy a different position and would not be without remedy. (*Dusenbury* v. *Speir,* 77 N. Y. 144; *Dill* v. *Inhabitants of Waring,* 7 Metc. 438; *Jones* v. *Judd,* 4 N. Y. 412; *M. L. I. Co.* v. *Buck,* 93 U. S. 24; *Spring Co.* v. *Knowlton,* 103 U. S. 49; *Skinner* v. *Henderson,* 10 Mo. 205; *Jaques* v. *Golightly,* 2 Wm. Bl. 1073; *Tracy* v. *Talmage,* 14 N. Y. 162; *C. T. Co.* v. *P. C. Co.,* 139 U. S. 24; *Van Duzen* v. *Blum,* 18 Pick. 229.)

GRAY, J. This is a taxpayers' action; brought by residents of the village of Waterloo, in this state, to enjoin a

proposed issue of bonds by the village and, particularly, in the event of such issue, to prevent the expenditure of the moneys in payments upon a certain contract, theretofore made with the defendants Bennett & Shepard for the construction of sewers. The following facts are established by the findings of the court. The village of Waterloo, originally, was incorporated in 1882, under a special charter. In 1908, there was submitted to the electors, at a special election held in the village for the purpose, a proposition for an appropriation of $100,000 " for the purpose of constructing a complete system of sewers, with disposal plant, according to the plans and specifications which have been approved by the State Board of Health." The proposition, also, contained statements pertinent to the expenditure of the moneys and to the bonding of the village to secure a loan. The proposition was carried at the election and, thereafter, a contract was made with Bennett & Shepard for the construction of the sewers. After they had commenced work, in certain condemnation proceedings, the Supreme Court decided that the proposition submitted to the village electors was fatally defective, for failing to state the estimated maximum and minimum cost of the improvement, as required by the General Village Law. Thereafter, and when Bennett & Shepard had performed about one-third part of the sewer contract, work was discontinued and nothing further was done under it. In the following year, 1909, the village of Waterloo was re-incorporated, under the provisions of the General Village Law of this state, and, in August of the same year, the trustees of the village called for a special election to vote upon a proposition for the construction " of an entire system of sewers and disposal plant, according to the plans and specifications, which were prepared for said village, and were approved by the State Commissioner of Health, on February 11, 1908, and August 21, 1908; " (being those heretofore referred to). The proposition contained the

statement of the estimated maximum and minimum cost, namely $100,000 and $90,000, respectively, and other statements appropriate to the contracting of a funded debt for the purpose, through an issue and a sale of the bonds of the village.    The proposition was carried at the election and, subsequently, the president of the village called for sealed proposals for $100,000 of village bonds.    The court found that the amounts set forth in the proposition submitted to the electors, as the estimated maximum and minimum cost, were based upon an estimated cost of construction of the system *ab initio* and not upon an "estimated cost of merely completing the portion of the sewer system which Bennett & Shepard had left uncompleted."    It was, also, found that "it was the expectation and intention,    *    *    *    in some way, to effect the payment to Bennett & Shepard of some amount out of the proceeds of the sale of said bonds, in recognition of the work done and materials furnished by said Bennett & Shepard in the construction of the portion of the sewer already laid by them."    The court decided that, by reason of the illegality of the previous proposition submitted to the village electors, the contract of the village with Bennett & Shepard was void; that they have no enforceable claim thereunder against the village growing out of the partial performance of the contract; that, upon the re-incorporation of the village, the proposition, then, submitted and adopted for the construction of a sewer system was legal and sufficient, and that the village should not be restrained from the issue and sale of its bonds. The judgment, while restraining the village and its officers from recognizing as valid the original sewer contracts, further, ordered that its provisions "shall not operate to prevent the letting of new contracts for the performance of the entire work of constructing said sewer system by the said defendants, Bennett & Shepard, if they are the lowest responsible bidders under the new advertisement to be made for proposals to construct such work;

and if such new contract shall be made with said defendants, Bennett & Shepard, they may avail themselves of the work already done, so far as said work shall be in conformity to the plans and specifications adopted by the village for said sewer system; and that said foregoing provisions of this judgment shall not operate to prevent any contractor, to whom the new contract for the construction of said sewer system may be awarded, from obtaining by purchase, or otherwise, from the said defendants, Bennett & Shepard, the right to utilize *pro tanto* the work and materials already performed and furnished by them in said portion of said sewer system which they have constructed, if said work and materials shall conform to the plans and specifications adopted by said Village for said sewer system."

The Appellate Division has affirmed the judgment of the Special Term, by the unanimous vote of the justices, and but one of the questions, which may have survived that affirmance, demands our consideration, upon this appeal. That question arises upon the clause just quoted from the judgment. It is the claim of the plaintiffs that the clause should be stricken out, in " so far as the same determines that the defendants Bennett & Shepard have any interest in the labor done and material placed in the streets of the Village." They would prohibit Bennett & Shepard, if they were successful bidders under the proposals for the new contract, from availing themselves of the work already done under the previous invalid contract as a factor in the estimate of the cost of construction; or from agreeing with a successful bidder for taking over and utilizing the work and materials already done and furnished. Having ground for the apprehension that the village will utilize, or sanction the utilization by contractors of, the sewer, which has been laid, the desire is to prevent it and, as the result, have the village obtain that much of its sewer system for nothing.

It is clear, and it has been so adjudged, that Bennett

& Shepard have no legal claim against the village based upon the partial construction by them of the sewer. This judgment did not invest them with any new claim upon that contract. That their contract was avoided was due to no fault on their part; it was due to a technical defect on the part of the village authorities. They had failed to observe a requirement of the General Village Law and, in consequence, the subsequent contract was invalid and the contractors were left remediless as to work done. Their freedom from fault, however, has nothing to do with the case. The question is not whether there has survived some obligation upon the contract; for any contractual relation created thereby must be regarded as wholly annulled. A new question has arisen and that is whether, the present village of Waterloo having voted to construct a system of sewers according to the previously adopted plans and specifications, it may take possession, and make use, of the work and materials, represented by the portion already constructed, and enrich itself by so much of a saving in the cost of the proposed improvement. Did not Bennett & Shepard have such property in the sewer work and materials, in the eye of the law, as, if appropriated by the village, to entitle them to recover the value, measured by the cost of reproduction ? How did the village acquire a right to the sewer ? In the absence of proof, the presumption is that the fee of the village streets is in the abutting owners and the easement of the village in the public street gave it no title to this sewer, which had been constructed therein. The work done by the contractors had not been accepted by the village, nor paid for. Invalid as the contract may have been, it operated as a permit, or license, to the contractors, to that extent that they were not trespassers in what they did in the public street. No title to the sewer laid therein, however, passed to the village and it subserved no street purpose. No question of relative rights of contractors and abutting owners is here. The sewer was not

placed in land belonging to the village and the village had not acquired the title to it. But it does not follow, in my opinion, that, because with the falling of the contract there fell every obligation incurred thereunder by the village, if the work done should be subsequently utilized, the village should not pay for it; just as it might pay for anything requisite in the work of construction. That would be neither a waste of public moneys, nor wrongful to taxpayers. It is a provision of section 262 of the Village Law (Cons. Laws, ch. 64) that "if the whole of the sewer system be constructed at the expense of the village and a sewer theretofore constructed wholly or partly at private expense be included in the map or plan of the system, the owners of the property  *  *  * shall be entitled to reimbursement therefor." The village might make use of its easements in the streets by laying sewers elsewhere than in this particular street; but, if it seeks to appropriate the work done there, I know of no rule of law, nor principle of equity, which will fortify the village authorities in the taking by them of Bennett & Shepard's property in the completed portion of the sewer without compensation. That has nothing to do with the former contract. The cases, to which the appellants refer, relate, generally, to actions sought to be maintained upon the illegal contract itself, or upon the theory of some obligation to be implied therefrom, and they are not controlling. It is a principle of the law that, where complete performance is prevented by law, a recovery may be had for benefits conferred by part performance, upon the principle of the maxim that "no one shall be made rich by making another poor." Such a recovery would not be upon the basis of the contract, which is invalidated, but upon an implied agreement, founded upon a moral obligation to account for the moneys, or property, received. (See *Tracy* v. *Talmage*, 14 N. Y. 162–191, and *Central Transp. Co.* v. *Pullman Palace Car Co.*, 139 U. S. 24, 60.) Although the contract of the parties failed and its agree-

ments became of no force, might not the circumstances, subsequently arising, make it just that the contractors should acquire a right and the village be subjected to a liability, by virtue of a new and quasi-contractual relation? I think we need go no further than to hold that the village could not appropriate and utilize the work and materials of Bennett & Shepard without coming under an implied obligation to make compensation. It might abandon that portion of the plan without liability arising; but if it does include the sewer work already completed, it takes what is not its property and the ordinary obligation at law will arise to pay for it. I think the learned justice, at the Special Term, was quite sound in his opinion that Bennett & Shepard should receive the advantage of the work done, if they obtain the new contract for sewer construction; or that they should be allowed to dispose of their interest in it to other contractors, if the work conformed to the requirements of the new contract.

For the reasons assigned, I advise the affirmance of the judgment.

CULLEN, Ch. J. (dissenting). I dissent from the decision about to be made, as I believe it will afford a precedent for the easy evasion of the safeguards enacted by law for the protection of the public against the unlawful acts of its officials. Whether the grounds on which the original contract between Bennett & Shepard was held illegal and void were technical or not I do not know. It is sufficient that the courts have held the contract illegal and void and that the contractors have acquiesced in that decision. Nor do I concede that the contractors were not at fault. On the contrary, they were at fault because it is elementary law, declared everywhere in this country, that persons dealing with public officers must take notice of the powers conferred upon such officers by statute and the limitations imposed on the exercise of such powers.

"A person dealing with the agents of a municipal corporation, has no right to presume they are acting within the line of their duty, but must be careful to see that they are acting within the provision of the law which confers authority upon them. (*Smith* v. *City of Newburgh,* 77 N. Y. 130, 137; see *McDonald* v. *Mayor, etc., of N. Y.,* 68 id. 23.) This brings us to the question whether the sewer placed in a village street under an illegal contract remained the property of the contractors or became that of the village. I insist that it became the property of the village. It is also elementary law that structures permanently attached to the land become part of the land. If the contractors had erected a town hall on land of the village, under a void contract, the building would belong to the village. It is sought to distinguish that case from the one before us because the fee of the street is presumptively in the abutting owners while the village (in reality the public) has only the easement. That distinction does not justify the decision about to be made. Doubtless, an article affixed to the soil of the street for the private use of the owner of the soil does not by being so affixed become the property of the public. This is so of a horse block or a hitching post. But, equally doubtless, where the constructions are made in a street in the exercise of the easement the public has therein, which includes the right to lay sewers, water pipes, etc., the title to these structures vests in the public. The case cannot be distinguished from a pavement laid in the street, the title to which, even if laid without authority, vests in the public and cannot be removed by the person who laid it. No more could the contractors enter upon the street, tear it up and remove the sewer. The, to me very curious, suggestion is made that the village must place the new sewer in another street unless it buys the present sewer. I had supposed that the municipal authorities had the right to construct a sewer in every street, and a sewer in another street might be of absolutely no benefit to the property owners

along this street.    Since the village authorities, before the making of the contract, had the right to lay a sewer in this street, and to lay it in any part of the street proper for the purpose, how could the concededly illegal acts of the officers of the village in making the contract impair or diminish the public easement ?    It is said that the village authorities have not accepted the work.    That is true, and the reason it is not accepted is because the claims of the contractor have been assigned to the village officials, or some of them, who are thus interested in securing payment for the work.    It is this very refusal to accept the work, which is good as far as it goes, of which the taxpayer complains and has a right to complain.

The argument that the work thus far done subserves no public purpose is unfounded.    It will subserve a public purpose when the rest of the sewer is completed.    The argument might just as well be made that the mason work done in the construction of a town hall serves no public purpose because the building will not be habitable without the work of the carpenters and other mechanics. The work of the construction of the sewer might have been let in several contracts each embracing one part, as is the case in the construction of the aqueduct for the city of New York.    It would be idle to contend that the part of the tunnel constructed by one contractor subserves no public purpose because it cannot be used without the completion of the remainder.    The principle that where complete performance is prevented by law a recovery may be had for benefits conferred by part performance has no application to the case before us.    The performance of this contract was not prevented by law; it never was authorized by law, and in the eye of the law was not the contract of the village, but the unauthorized and, therefore, personal acts of certain officials.    Neither is the claim that the utilization of the work raised an implied agreement on the part of the village to pay for the work well founded.    The cases cited to sustain that doctrine apply to

private persons or corporations and not to municipalities or public bodies. " But the claim is made that, as the work and materials were furnished, and the village has received some benefit from them, it is under an implied obligation to pay what they were worth. If this were so, the law could always be easily evaded; that it is not so is no longer an open question in this court." (*Parr* v. *Village of Greenbush*, 72 N. Y. 463, 472.) The case is a hard one for the contractor (or rather for the persons who have acquired an interest in his claim) even though he has fallen into misfortune by his own carelessness in failing to see before executing the contract that the public officers had complied with the requirements of the law. But he is not without a remedy. Though he cannot now maintain any action in the courts, he may apply to the legislature, who, if his claim is equitable, may recognize it and direct its payment. This was the case in *Wrought Iron Bridge Co.* v. *Town of Attica.* (119 N. Y. 204.) A bridge having been built under a void contract, the contractor was defeated in an action on the contract; but the claim having been ratified by the legislature, it was subsequently allowed to recover. No one imagined, however, that the contractor had the right to remove the bridge or prevent the public from passing over it, a principle which is held in the decision about to be made. The case does not fall within section 262 of the Village Law, which provides for the payment of a sewer constructed wholly or partly at private expense. That has no application to a sewer assumed to be constructed for the public and not for the use and at the expense of private parties.

WERNER, CHASE, COLLIN, CUDDEBACK and MILLER, JJ., concur with GRAY, J.; CULLEN, Ch. J., reads dissenting opinion.

Judgment affirmed, with costs.