[617 NYS2d 969]

ALEC ROSEFSKY, by RUTHANNE KOFFMAN, His Attorney-in-Fact, Appellant, v STATE OF NEW YORK, Respondent.

Third Department, October 27, 1994

## APPEARANCES OF COUNSEL

*Aswad & Ingraham,* Binghamton *(Richard N. Aswad* of counsel), for appellant.

*G. Oliver Koppell, Attorney-General,* Albany *(Vernon Stuart* and *Peter G. Crary* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH JR., J.

In 1982, claimant leased the first floor of a building at 92 Hawley Street in the City of Binghamton, Broome County, to the State for use by the State Education Department (hereinafter Department). Claimant was thereafter declared incompetent, and at all times and in all matters relevant to this action he acted through his attorney-in-fact, the guardians of his property, and their legal counsel. In time, the Department sought to expand its operations into a portion of the second floor of the building, and on June 1, 1986, after claimant completed certain requested renovations for which the Department agreed he was to be reimbursed by the State, the Department began occupying approximately 2,000 square feet of the second floor.

The original lease, with agreed-upon renewals, expired on May 31, 1986, and while negotiations proceeded with respect to the terms of a new lease that would cover both floors, the State continued paying rent at an annual rate of $9 per square foot for the first floor only. Difficulties were encountered in settling on terms that were acceptable to both parties —in part because claimant had sold the building on June 15, 1988, making it impossible for him to commit to a long-term lease—but negotiations continued until November 8, 1989, when the Commissioner of General Services informed claimant's then-counsel that, as there was no fully executed contract for rental of the second floor, the State did not intend to pay any rent for occupation of that space for the 25 months between June 1986 and June 1988, nor for the renovations that claimant had funded to make that occupancy possible.

On May 8, 1990 claimant filed a notice of intention to file a claim, and on April 17, 1991 he filed a claim against the State seeking $37,500 in rent, at the annual rate of $9 per square foot, for the second floor space occupied by the Department, $3,675 in rent for the first floor for June 1988, and $11,710 for the renovations. The State moved to dismiss the claim or, in the alternative, for summary judgment; claimant cross-moved for summary judgment. The Court of Claims found the claim to have been timely interposed, given claimant's legal disability, but granted the State's motion as to the first and third causes of action, those seeking reimbursement for the renovation and rental of the second floor, finding them barred by State Finance Law § 112 (2). Claimant appeals.

■ Preliminarily, the State argues that the claim should have been dismissed for want of jurisdiction, for neither the notice of intention nor the notice of claim was filed within six months of the claim's accrual *(see,* Court of Claims Act § 10 [4]). Because guardians had been appointed for claimant, and he acted through an attorney-in-fact, represented by legal counsel, during the period when the events underlying this claim were unfolding, the State suggests that claimant should not be permitted to rely upon the toll afforded by Court of Claims Act § 10 (5) to those under a legal disability. We are unpersuaded. When the Legislature has seen fit to make this type of exception to a tolling provision, it has done so explicitly *(see,* Workers' Compensation Law § 115). There being no such exception in Court of Claims Act § 10 (5), we must presume that it was intended to apply to all claimants under a legal disability, regardless of whether they are represented *(see, Young v State of New York,* 92 Misc 2d 795; *cf., Murphy v Village of Fort Edward,* 213 NY 397, 403).

But even if claimant were not entitled to the toll provided by Court of Claims Act § 10 (5), the claim would still have been filed in a timely manner, for negotiations concerning the base rental rate were ongoing until November 8, 1989, when the State indicated that it did not intend to pay anything at all for the second floor or the renovations. Only then, when claimant was apprised that no lease would be signed and no payment forthcoming, could the resulting damages be ascertained *(see, Waters of Saratoga Springs v State of New York,* 116 AD2d 875, 877).

■ As for the merits, the Court of Claims was correct in its determination that the claim for rent for the second floor is barred by State Finance Law § 112 (2), which required, at the time, that any contract with a value greater than $5,000 be approved by and filed with the Comptroller before it could become effective. We disagree with claimant's characterization of his relationship with the State as creating a contract implied-in-law for money had and received—enforcement of which is not barred by State Finance Law § 112—rather than as a contract implied-in-fact.

A contract implied-in-law exists where one party, without any expression of assent from the other, obtains or retains possession of money or other property that actually belongs to the latter, by oppression, extortion, deceit or similar means *(see, Board of Educ. v Rettaliata,* 78 NY2d 128, 138; *Parsa v*

*State of New York,* 64 NY2d 143, 148). Such a "contract" is not grounded in an implied promise to pay, but in a duty that arises, independent of any promise, to restore property to its rightful owner. Here, claimant agreed to surrender possession of the premises to the State in exchange for an express promise that payment would be forthcoming after a new lease was executed, and an implied promise that negotiations would proceed, in good faith, until that came to pass. Ordinarily, in these circumstances, principles of equitable estoppel could be invoked to bar one in the State's position from avoiding liability. However, where the State is a party, those principles are rarely applicable. Indeed it has been authoritatively and unambiguously declared that the State's acceptance of benefits "does not estop it from challenging the validity of the contract or from denying liability pursuant to it" *(Parsa v State of New York, supra,* at 147), as it has done here *(see also, Matter of New York State Med. Transporters Assn. v Perales,* 77 NY2d 126, 130-131).

Nor are we persuaded by claimant's creative attempts to circumvent the requirements of this statute which interdict his recovery by interpreting the Department's tenancy as a string of monthly rentals, each with a value below the $5,000 threshold. The mere fact that a tenancy is terminable on one month's notice is not sufficient to transform it into a series of one-month tenancies, and the State was neither a holdover tenant—there having been no lease of the second floor from which it could have held over—nor a monthly tenant. It was, in actuality, a tenant at will, having entered into possession with claimant's permission but without any term having been agreed upon *(see, Fisher v Queens Park Realty Corp.,* 41 AD2d 547, 549), and a tenancy at will, the termination of which need not even occur at the end of a monthly period, is clearly a single continuous tenancy.

The third cause of action, by which claimant seeks to recover for the cost of renovations made to facilitate the State's occupancy of the second floor, is likewise barred by State Finance Law § 112—the purpose of which is to "protect the public from governmental misconduct or improvidence" *(Parsa v State of New York, supra,* at 147). Claimant argues that inasmuch as the renovations, which were completed while an enforceable lease still governed the State's rental of the first floor, were approved by the Department, additional approval by the Comptroller was unnecessary. In response, it suffices merely to note that the lease explicitly requires ap-

proval by the tenant, which is defined therein as "THE PEOPLE OF THE STATE OF NEW YORK, acting by and through the Commissioner of General Services pursuant to the State Finance Law". While the record contains some evidence that the renovations were approved by the Office of General Services, the express mandate that the Commissioner act "pursuant to the State Finance Law" indicates that when, as here, the agreement under consideration involves payment of an amount greater than $5,000, approval of the Comptroller is indispensable.

Although the effect of the statute in this case may indeed be harsh, it should be borne in mind, as observed by the Court of Claims, that while the State did occupy the second floor space for 25 months without incurring any legally binding obligation to pay rent, claimant's representatives acquiesced in the slow pace of the lease negotiations, perhaps because of the impending sale of the property. In addition, there is an intimation in the record that claimant may have recouped the cost of the renovations as part of the sale price of the building. And lastly, it must be recognized that while claimant, and others doing business with the State, may occasionally suffer what appears to be the unjust consequences of State Finance Law § 112, the over-all benefit accruing to the citizens of the State from its application has been determined, by the Legislature, to be worth the risk of such a casualty, ostensibly because contracting parties are better able to protect themselves from State Finance Law § 112 than the people would be to protect themselves without it.

CARDONA, P. J., MIKOLL, MERCURE and WHITE, JJ., concur.

Ordered that the order is affirmed, without costs.