OPINION OF THE COURT
Gerard M. Weisberg, J.
This is claimant’s motion to dismiss the State’s fourth affirmative defense; or in the alternative, for permission to file a late claim pursuant to Court of Claims Act § 10 (6), to deem *922 the filed claim to have been filed nunc pro tune within the statutory period, or to estop the State from asserting such defense. It is also defendant’s cross motion for summary judgment dismissing the claim upon its fourth and eighth affirmative defenses. In reply, claimant seeks to strike the eighth affirmative defense, or to estop the State from asserting it, and for summary judgment in its favor.
The facts are not in dispute. By a lease dated March 25, 1977, claimant rented office space in 230 Park Avenue, New York, New York, to the New York State Energy Research and Development Authority (NYSERDA) for a term of 10 years, ending July 31, 1987. Pursuant to a sublease dated February 1, 1984, NYSERDA subleased a portion of the space to the New York State Department of Commerce. The sublease was filed and approved by the New York State Comptroller on August 30, 1984. Commencing on or about July 1, 1987, claimant and defendant entered into negotiations for a five-year lease for some or all of the formerly subleased premises. The offices were to be, and were in fact, used by the New York State Department of Commerce, the Office of the Inspector General of the State of New York, and as New York City chambers for Chief Judge Judith S. Kaye. Under a covering letter dated December 1, 1987, Robert J. Fleury, Assistant Chief of the Bureau of Leases, sent claimant a proposed five-year lease for the premises. It provided for rent at the rate of $76,890 per annum for the period August 1, 1987 to February 28, 1990, and $82,016 per annum for the period March 1, 1990 to July 31, 1992: all of the foregoing subject to adjustment for taxes and inflation. Claimant allegedly signed and returned this lease to the defendant. Be that as it may, paragraph 35 provides as follows: "This Lease shall not be binding and effective upon the State of New York unless and until the same shall have been approved by the State Attorney General and the State Comptroller, as signified by their signatures (or the signatures of their representatives) on Page No. 13 of this Lease.” Neither of those signatures appears, and there does not appear to be any question that the lease was not filed and approved by the Comptroller.
In a series of letters dated March 22, 1988, May 3, 1989 and May 10, 1990, Timothy J. Leonard, Chief of the Bureau of Leases, confirmed that defendant would be occupying the subject premises while the formal lease was being finalized and that defendant would be paying rent at the rate of $6,407.50 per month from August 1, 1987 through January 31, *923 1990. This figure was obviously arrived at by dividing the yearly rent in the proposed lease by 12.[1] Whether anything additional was to be owed for taxes and inflation is unclear.
The State remained in possession of the premises from August 1, 1987 until January 31, 1990. Although it repeatedly assured claimant that rent payments would be forthcoming and funds had been appropriated in prior budgets, no payments were made. By a letter dated August 29, 1991, defendant advised claimant in part as follow: "We have been notified by the Division of Budget that the Inspector General’s Office does not have funds appropriated for the above subject proposed agreement in their current budget, nor do they have the authority to pay obligations from prior fiscal years.” This claim[2] was served on the defendant on December 16, 1991 and filed with the Clerk on the next day. It pleads two causes of action: breach of contract and unjust enrichment.
As indicated above, claimant first moves to dismiss defendant’s fourth affirmative defense. It provides: "The Court lacks jurisdiction over the claim due to claimant’s failure to serve and file any notice of intention or the claim within the time constraints of the Court of Claims Act.” However, paragraph 6 of the claim states: "Claimant alleges that the claim herein accrued on or about August 29, 1991 and, therefore, this claim is filed within the time constraints set forth in Section 10 of the Court of Claims Act.” In its answer, in response to this paragraph, the State said that it: "Leaves to the Court’s determination the legal conclusions contained in paragraph 6 of [the] Notice of Claim”. CPLR 3018 provides that all statements in a complaint not denied are deemed admitted. There is no category of response denominated "leaving it to the Court’s determination.” Inasmuch as defendant has failed to deny the statements and allegations of timeliness in paragraph 6 of the claim, they are deemed admitted. Alternatively, should I reach the issue, I would find the claim timely as to the cause of action for unjust enrichment.[3] As *924 stated above, the claim pleads two causes of action: breach of contract and unjust enrichment. Pursuant to Court of Claims Act § 10 (4), it had to be served and filed within six months of accrual. Defendant appears to argue that both causes of action accrued when it vacated the premises on January 31, 1990. Claimant’s cause of action for unjust enrichment did not accrue, however, until the purported lease under which defendant was in possession, and which was subject to ratification (see, Deverho Constr. Co. v State of New York, 94 Misc 2d 1053), was disaffirmed on August 29, 1991. A cause of action for use and occupation could not accrue until the lease was disaffirmed. (See, Rosefsky v State of New York, 205 AD2d 120.)
Claimant’s motion to strike the fourth affirmative defense is therefore granted. Its motion for permission to file a late claim or to estop the State from relying on Court of Claims Act § 10 is denied as moot. Its motion to deem the claim to have been timely filed nunc pro tune is denied as both moot and lacking authority. (See, Spinella v State of New York, NYLJ, Apr. 20, 1988, at 13, col 1, supra.)
With respect to the cross motions, defendant first moves to dismiss the claim as untimely. For the reasons stated above, that motion is denied. The State next moves to dismiss the breach of contract cause of action as violating section 112 (2) of the State Finance Law. Prior to 1992, that statute provided in pertinent part: "Before any contract made for or by any state department, board, officer, commission, or institution, shall be executed or become effective, whenever such contract exceeds 5,000 dollars in amount, it shall first be approved by the comptroller and filed in his office.”[4] The purpose of this statute is twofold: to prevent State employees from making improvident or extravagant contracts and from creating liabilities for which there has been no appropriation. (Deverho Constr. Co. v State of New York, 94 Misc 2d 1053, supra.) Nor does the State’s acceptance of benefits under an unapproved contract estop it from denying liability under such contract (Parsa v State of New York, 64 NY2d 143 [emphasis supplied]).
Claimant first objected to our granting summary judgment to the State with respect to this defense because the cross motion did not contain the affidavit of someone with personal knowledge of the facts. It is my understanding that claimant *925 concedes that the three temporary leases had not been filed nor approved by the Comptroller. The claimant’s ability to maintain a breach of contract action in the face of that omission is a question of law that requires no supporting affidavits. Be that as it may, the State has now submitted the affidavit of Theodore F. Winnie, Chief Auditor of State Expenditures, Office of the New York State Comptroller, in which he states that there is no record in that office of the temporary leases having ever been filed or approved by the Comptroller. If that is not correct, the burden was on claimant to come forward with evidence to the contrary. (Zuckerman v City of New York, 49 NY2d 557.)
Claimant also asserts that section 112 (2) does not apply to the three temporary leases. It concludes this based on two arguments: (i) that while the five-year sublease was conditioned on the Comptroller’s approval, the temporary leases were not; and (ii) that the temporary leases were just extensions of the already approved sublease. Neither argument is persuasive. State officers cannot waive the provisions of section 112 (2). (Matter of Konski Engrs. v Levitt, 69 AD2d 940, affd on opn below 49 NY2d 850, cert denied 449 US 840.) As to extensions or renewals of approved contracts, unless the renewal is pursuant to, and in accordance with, an option provision contained in the approved contract, the extension or renewal must be independently approved by the Comptroller. (Westgate N. v State Univ. of N. Y., 77 Misc 2d 611, affd without opn 47 AD2d 1004, lv denied 36 NY2d 647.)
Lastly, claimant relies on Rosefsky v State of New York (205 AD2d 120, supra) for the proposition that a holdover under an approved lease does not have to satisfy section 112 (2). In Rosefsky, claimant leased the first floor of its premises to the State at $9 per square foot. The lease expired on May 31, 1986. The State desired to remain and to expand the leasehold to include the second floor. As negotiations proceeded along those lines, the State, continued paying rent at $9 per square foot, but for the first floor only. On June 15, 1988 claimant sold the building. On November 8, 1989, the State informed claimant that it did not intend to pay for the period it was in possession of the second floor without a lease, June 1986 to June 1988. As to the first floor, $3,675 was owed (presumably for rent from June 1, 1988 until June 15, 1988) under the month-to-month tenancy that had been created by the State’s holding over and paying rent. (See, Real Property Law *926 § 232-c.) The Court of Claims allowed this cause of action to survive and no appeal from that ruling was taken.
Claimant argues that here too the State was a holdover tenant under an approved lease and should therefore be liable under contract despite section 112 (2). There are two problems with claimant’s analogy: the State here was not a holdover tenant under the Real Property Law and, more importantly, the liability claimant seeks to impose is greater than $5,000.
Under the common law, if a tenant held over in possession at the expiration of the lease, the landlord had the option to either evict or, if the original lease was for one year or longer, to hold the tenant for an additional year. This was a contract implied at law as a punishment for the tenant’s trespassing. (Kennedy v City of New York, 196 NY 19.) To ameliorate this rule, Real Property Law § 232-c was enacted. It provides, generally, that where a tenant holds over the landlord can either evict the tenant as a trespasser, negotiate a new lease, or continue to accept the old rent. It is the last option only that creates a holdover tenancy and on a month-to-month basis. (See, Real Property Law § 232-c; Matter of Jaroslow v Lehigh Val. R. R. Co., 23 NY2d 991.) In Rosefsky (supra), it is unclear whether the claimant’s cause of action for $3,675 arose pursuant to contract or this statute. However, it made no difference because the damages sought were below the threshold at which section 112 (2) applies. Here, defendant paid no rent after the expiration of the lease, no holdover tenancy under Real Property Law § 232-c was created, and the liability sought to be imposed is greater than $5,000. I therefore find that section 112 (2) of the State Finance Law does apply. Since it has not been complied with, the first cause of action must be dismissed.
As indicated above, claimant’s second cause of action sounds in unjust enrichment. As was held by the Court of Appeals in Parsa v State of New York (64 NY2d 143, supra), this court has jurisdiction to award money damages based on a contract implied in law which is not subject to section 112 (2) because it is not a true contract at all. In Parsa, our highest Court held that an action for money had and received was such a contract implied in law.
Defendant objects that the State’s use and occupation of claimant’s premises from August 1, 1987 until January 31, 1990 does not create a cause of action for money had and received. That is, of course, correct. However, I do not read *927 Parsa (supra) as defendant apparently does, to wit, as limiting causes of action in quasi-contract to money had and received. There are many types of causes of action for unjust enrichment. One of the most ancient is that where, as here, a tenant has gone into possession of real property under an invalid lease, the landlord is entitled to reasonable use and occupancy —not as rent, but as damages for trespass. The tenant is said to be a tenant at will (Talamo v Spitzmiller, 120 NY 37) which is, in fact, a legal fiction — for the tenancy is not a tenancy at all but a trespass — so to allow the landlord to recover contract damages therefor. (Kennedy v City of New York, 196 NY 19, supra; see generally, Bradkin v Leverton, 26 NY2d 192; 22 NY Jur 2d, Contracts, § 446.)
It is interesting to note that Rosefsky (supra) touched on this issue but then failed to address it. There the State held over at the expiration of an approved lease while negotiating a new one. When that fell through, claimant sued. Obviously no claim under contract existed by virtue of section 112 (2). The claimant then argued that month-to-month tenancies had been created. The Rosefsky court rejected that analysis, citing the common-law rule that, rather, a tenancy at will had been created. That tribunal, however, then failed to address whether claimant could or could not recover under that theory. Thus, the issue, which is one of first impression, is: can a landlord who has rented to the State under a lease invalid under State Finance Law § 112 (2) recover for the resulting tenancy at will under quasi-contract?
For at least a century, it has been the common-law rule that a landlord could recover reasonable use and occupation from a tenant who went into possession under an invalid lease. (Talamo v Spitzmiller, 120 NY 37 [1890], supra.) In fact, in 1896 this rule was in part codified by Real Property Law § 220 which provides: "The landlord may recover a reasonable compensation for the use and occupation of real property, by any person, under an agreement, not made by deed; and a paroi lease or other agreement may be used as evidence of the amount to which he is entitled.” One authority has stated that this statute was enacted specifically to cover situations where the lease was invalid for a failure to satisfy the Statute of Frauds, or for a failure to specify rent in the agreement. (Rasch, New York Landlord and Tenant — Summary Proceedings § 363 [2d ed].) Where the lease has been found to be invalid for other reasons, the common-law rule has still been applied. (See, Rasch, New York Landlord and Tenant — Sum *928 mary Proceedings § 1932 [2d ed]; compare, Genesee Mgt. v Del Bello, 69 AD2d 987 [tenant under lease invalid for Statute of Frauds is tenant at will liable for reasonable use and occupation under Real Property Law § 220], with Altshuler v Lipschitz, 113 NYS 1058 [App Term] [tenant under lease voided for fraud is tenant at will under the common law]; O’Neill v Derderian, 139 Misc 888 [tenant under lease invalid under the Multiple Dwelling Law is tenant at will under the common law].)
The only possible basis I can see for not applying these rules to the State is that Real Property Law § 220 by its own terms applies to the use of real property "by any person.” Under General Construction Law § 37, the term "person” generally does not include the State. Case law, however, indicates that the definitions in section 37 are not exclusive and are inapplicable when the proper construction of the statute requires a different interpretation. (State of Ohio ex rel. Fulton v Saal, 239 App Div 420, lv denied 264 NY 465.) Moreover, it has been held that the State is not a person under a general statute only when it acts in its governmental capacity. (Towner v Jimerson, 67 AD2d 817.) Here, the State was acting in its proprietary capacity, leasing real property as any tenant would. The issue therefore becomes is there any reason why the State should not be held to the same rules of quasi-contractual recovery for use and occupancy of real property as any other tenant?
There is no doubt that if the State trespasses or holds over after the expiration of its lease the landlord may evict it, by an action in ejectment if necessary, and recover damages for the reasonable value of the use and occupancy. (RPAPL 601; Nodine v State of New York, 192 Misc 572; see also, RPAPL 747; 2641 Concourse Co. v City Univ. of N. Y., 137 Misc 2d 802, affd on opn below 147 AD2d 379.) The damages would not be for breach of contract — for no contract exists — but to prevent unjust enrichment to the tenant for its tortuous conduct. (Willis v McKinnon, 178 NY 451; Holmes v Davis, 19 NY 488.) Moreover, this would be true whether or not the continued possession had been approved by the Comptroller, whether it was fiscally prudent and whether money had been appropriated therefor. This is so because any other rule would be unconstitutional: for if the State could trespass or hold over with impunity, it would be taking property without due process and for a public use without compensation in violation of, *929 among other things, NY Constitution, article I, §§ 6 and 7. (Ward v Kropf 207 NY 467.)
Thus, here, at the expiration of the approved sublease, or on the disaffirmance of the temporary leases, if the State had refused to vacate, the claimant could have evicted defendant as a trespasser and sought damages for reasonable use and occupation. (RPAPL 601; Nodine v State of New York, 192 Misc 572, supra; see, Diocese of Buffalo v McCarthy, 91 AD2d 213, lv denied 59 NY2d 605; Earl v Nalley, 273 App Div 451; Beacway Operating Corp. v Concert Arts Socy., 123 Misc 2d 452.)
What if that happened here? Although ejectment is an action at common law (Miceli v Riley, 79 AD2d 165) that exists independently of statute, whether this court has the jurisdiction to order it is unclear. (Cf., Court of Claims Act § 9 [Court of Claims jurisdiction limited generally to awarding money damages].) Thus, if the State had refused to vacate, claimant might well have had to go into New York State Supreme Court for an order of ejectment, or into the Civil Court of the City of New York for a warrant of eviction, and then have had to bring an action for use and occupation here.[5] But is that not exactly the situation claimant is in now? Defendant used claimant’s property and then vacated. Why should claimant’s damages abate solely because the State voluntarily vacated the premises, after having used them rent free for 2 Vi years, instead of having been evicted? Having trespassed, defendant must pay damages to prevent its unjust enrichment.
Defendant’s cross motion for summary judgment dismissing the second cause of action is therefore denied. Claimant’s motion to strike the eighth affirmative defense is granted as to its second cause of action (unjust enrichment). Inasmuch as there is no dispute as to the existence and length of defendant’s possession, and because a motion for summary judgment searches the record (CPLR 3212 [b]; Siegel, NY Prac § 282, at 339), I grant claimant partial summary judgment on the issue of liability on its second cause of action. As to damages, the rent reserved in the approved sublease and in *930 the temporary leases appears to be different. There is therefore a question of fact as to the reasonable value of use and occupation precluding full summary judgment. (See, 2641 Concourse Co. v City Univ. of N. Y., 137 Misc 2d 802, affd on opn below 147 AD2d 379, supra.)

. $76,890/12 = $6,407.50.

. While the document was labelled a "Notice of Claim,” a paper which does not exist under Court of Claims practice (see, Spinella v State of New York, NYU, Apr. 20, 1988, at 13, col 1), claimant apparently intended it as a claim. Since the Clerk accepted it as such and assigned it a claim number, and the State has answered it as a claim, I shall treat it as such.

. Inasmuch as I find the lease invalid, as shall be discussed infra, I need not and do not reach the issue of whether this claim filed for its breach would have been timely had the answer not admitted it.

. Effective September 1, 1992, the threshold was increased to $10,000. (L 1992, ch 319.)

. In fact, prior to the enactment of RPAPL 601, a landlord had to do just that: evict a trespasser before an action for money damages could have been commenced. (Holmes v Davis, 19 NY 488, supra.)